UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

| Present: The Honorable | **GARY ALLEN FEESS** | |
|---|---|---|
| Renee Fisher | None | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**     (In Chambers)

### ORDER RE: BANKRUPTCY APPEAL

## I.
## INTRODUCTION AND BACKGROUND

Robert Mayer ("Mayer"), a principal in Willowcrest DHS, LLC ("Willowcrest"), negotiated a $9,400,000 loan with Golden State Bank ("GSB") to finance the construction of a 50-unit condominium complex in Desert Hot Springs ("the Willowcrest Project"). (Ex. 36 [Dec. of Robert Mayer ("Mayer Dec.")] ¶¶ 5, 10.)  As part of its underwriting process, GSB obtained an appraisal estimating the value of the finished project at approximately $12,500,000.  (Id. ¶¶ 6–7.)  Because GSB required that Mayer and his co-managing member provide personal guarantees for the prospective loan, in March 2006 Mayer also provided GSB a personal financial statement setting forth his assets and liabilities.  (Id. ¶¶ 8–9.)  That personal financial statement, dated April 1, 2005, disclosed liabilities of approximately $23,000,000, most of which were identified as real estate mortgages, and assets of approximately $55,000,000, including approximately $47,000,000 in real estate holdings.  (Id. ¶ 9; Ex. 40, Ex. A [Personal Financial Statement] at 1.)  The financial statement failed to disclose personal guarantees that Mayer made on the following three loans:

   – the March 17, 2005, Scripps Investments construction loan in the principal amount of $18,500,000 (Ex. 41 [Dec. of Jeffrey Lubin] ¶ 2);

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

– the October 11, 2005, Scripps Investments construction loan in the principal amount of $34,000,000 (id. ¶ 3);

– the ChinaTrust Bank loan of $24,000,000 (Ex. 46 [Dec. of Annmarie Paolino] ¶ 5).

In short, these three guarantees, which created contingent liabilities in excess of $75,000,000, were omitted from Mayer's financial statement.

After receiving the loan application and Mayer's financial statements, among other documents, on June 2, 2006, GSB approved a loan of approximately $9,400,000 to Willowcrest for construction of the Willowcrest Project. (Mayer Dec. ¶ 10.) The loan was secured by the real estate and improvements constituting the Willowcrest Project and was guaranteed by Mayer. (See Mayer Dec. ¶¶ 8, 10.)

Apparently the catastrophic events of 2007-2008 in the financial sector and the collapse of the real estate market took Willowcrest down with many other developers. GSB foreclosed on the property, which was apparently inadequate to satisfy the amount due GSB, thus leaving Mayer responsible for the difference. (See Mayer Dec. ¶ 12.) In the meantime, on June 4, 2008, Mayer filed a petition for Chapter 7 bankruptcy protection in which he sought to discharge his debt to GSB. (Ex. 20 [Declaration of Robert Davis in Support of Reply to GSB's Motion for Summary Judgment ("Davis Dec.")], Ex. B [Mayer's Bankruptcy Petition] at 3, 82.)

In Mayer's bankruptcy action, GSB filed an adversary proceeding alleging that Mayer had defrauded the bank by submitting a false and fraudulent personal financial statement in support of the Willowcrest loan application. (Ex. 3 [Amended Compl.] ¶¶ 13.) Among other things, GSB alleged that Mayer's financial statement overstated his assets and failed to disclose any contingent liabilities, and that it reasonably relied on these misleading statements in giving Mayer the Willowcrest loan. (Id. ¶¶ 3–5, 9, 11, 15.) GSB thus contends that, because this debt was obtained by fraud, 11 U.S.C. § 523(a) makes it non-dischargeable. (Id. ¶ 20.)

In proceedings below, the parties presented cross motions for summary judgment. The bankruptcy judge denied GSB's motion for summary judgment on its fraud claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

because she found sufficient conflict in the record to establish a genuine issue of material fact for trial as to (a) whether GSB reasonably relied on Mayer's financial statements and (b) whether Mayer knew that his financial statement contained false and misleading statements and omissions. (Ex. 23 [Transcript of Proceedings] at 2–3.) By contrast, the bankruptcy judge granted Mayer's motion for summary judgment, concluding that GSB failed to present any evidence that it reasonably relied on the financial statement submitted by Mayer or that Mayer knew the statements were false, and therefore that GSB could not, as a matter of law, prove a fraud claim at trial. (Transcript of Proceedings at 4.) GSB appealed to this Court. (Docket No. 1 [Not. of Appeal].)

## II.
## THE MOTIONS

### A. STANDARD OF REVIEW

This Court reviews de novo the bankruptcy court's decisions on the cross motions for summary judgment. See In re Filtercorp, Inc., 163 F.3d 570, 578 (9th Cir. 1998). In deciding a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Summary judgment is appropriate where the evidence demonstrates that there are no genuine issues of material fact for trial and the moving party is entitled to judgment as a matter of law." Joye v. Franchise Tax Bd. (In re Joye), 578 F.3d 1070, 1074 (9th Cir. 2009).

### B. DISCUSSION

Under 11 U.S.C. § 523(a)(2), a debtor may not be discharged from a debt for money obtained by "use of a statement in writing . . . (i) that is materially false; (ii) respecting the debtor's . . . financial condition; (iii) on which the creditor to whom the debtor is liable for such money . . . reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive." 11 U.S.C. § 523(a)(2)(B). The Ninth Circuit has "reworded these requirements as follows: (1) a representation of fact by the debtor, (2) that was material, (3) that the debtor knew at the time to be false, (4) that the debtor made with the intention of deceiving the creditor, (5) upon which the creditor relied, (6) that the creditor's reliance was reasonable, (7) that damage proximately resulted from the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

representation." Candland v. Ins. Co. of N. Am. (In re Candland), 90 F.3d 1466, 1469 (9th Cir. 1996).

The bankruptcy court's ruling on the cross motions for summary judgment turned on the third and fifth elements. Specifically, the court concluded that there was no evidence that Mayer knew his personal financial statement was false or that GSB relied on the financial statement in deciding to make the Willowcrest loan. (Transcript of Proceedings at 5.)

The Court **AFFIRMS** the denial of GSB's motion for summary judgment and **REVERSES** the grant of Mayer's motion for summary judgment. The Court agrees that GSB has failed to establish, on the basis of undisputed facts, that it is entitled to judgment as a matter of law. However, the Court does not agree that GSB has failed to present evidence establishing that it reasonably relied on the materials submitted by Mayer or that Mayer knew that his personal financial statement was false.

### 1. ACTUAL RELIANCE

The bankruptcy court concluded that there was no evidence that GSB actually relied on Mayer's personal financial statement in deciding whether to approve the Willowcrest loan. (Transcript of Proceedings at 4.) The Court disagrees.

The record contains the declaration of Ralph Wiita, the President and CEO of GSB, indicating that the bank "relied on information provided by Robert O. Mayer including, but not limited to, financial statements" in considering whether to approve the Willowcrest loan. (Ex. 40 [Declaration of Ralph Wiita] ¶ 4.) Annmarie Paolino, GSB's Chief Credit Officer, likewise stated in her declaration that, "in reliance on this information as listed on both Personal Financial Statements, GSB approved and funded the loan . . . ." (Paolino Dec. ¶ 3.) While the Court agrees that the GSB representatives' statements are not supported by a robust factual basis, they are enough to raise a triable issue of fact as to whether GSB actually relied on Mayer's personal financial statement in deciding to issue the loan. Moreover, even Mayer's declaration can be read to support an inference that the bank would rely on his financial statement: he admitted that, as part of the underwriting process, "Plaintiff Golden State Bank required that I and my co-managing member, Walter Luce[,] provide personal guarantees for the prospective loan"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

and that he accordingly provided his personal financial statement. (Mayer Dec. ¶¶ 8–9.) The Court therefore concludes that Mayer was not entitled to summary judgment on the ground that GSB had presented no evidence of its reliance on his personal financial statement.

### 2. KNOWLEDGE OF FALSITY AND INTENT TO DECEIVE

Because they are related, the Court considers the knowledge of falsity and intent to deceive elements together.

As an initial matter, there is some dispute about whether omitting the personal guarantees from the personal financial statement even rendered the statement false. First, Mayer contends that his personal financial statement accurately reflected his liabilities. (See Opening Br. in Support of District Court Affirming Summary Judgment in Favor of Mayer at 4, 11.) This is belied by the record. Mayer's personal financial statement reported liabilities totaling less that $23,000,000. (Wiita Dec., Ex. A [Personal Financial Statement] at 1.) At the time he submitted this personal financial statement to GSB, he had signed personal guarantees on a total of $75,500,000 in loans from Scripps and ChinaTrust Bank. (See Lubin Dec. ¶¶ 2–3; Paolino Dec. ¶ 5.) To the extent Mayer suggests that his personal financial statement need not have reflected guarantees made after the date of the statement but before he submitted the statement to GSB,[1] the Court rejects that contention. A trier of fact could reasonably conclude that, in providing GSB the personal financial statement in March 2006, Mayer at the very least tacitly represented that it was complete and accurate and that he had no material change in his financial position since the time that statement was prepared.

Second, the bankruptcy court suggested that the omission may not be false "because there is more security for the loan than the loan." (Transcript of Proceedings at 17.) This misapprehends the nature of Mayer's personal guarantees. Even if the loans were oversecured, Mayer was on the hook to pay back up to the full amount of the loan if the property securing the property decreased in value. Although there was a chance he

---

[1] This would include the October 11, 2005 guarantee on the $34,000,000 Scripps loan and possibly the $23,000,000 guarantee on the ChinaTrust Bank loan, the precise origination date of which is not reflected in the record.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

would never have to pay anything, there was also a chance he would have to pay some or all of the loan. Failing to report this possibility misrepresented his true financial position. See Staten Island Sav. Bank v. Scarpinito (In re Scarpinito), 196 B.R. 257, 262–63 (Bankr. E.D.N.Y. 1996) (failure to report contingent liabilities rendered financial statement materially false). The key question thus is whether the record contains evidence supporting a conclusion that Mayer knew of the falsity of his financial statement and intended to deceive GSB by failing to report these liabilities.

For purposes of § 523(a)(2), knowledge of falsity and intent to deceive can be established "by showing either actual knowledge of the falsity of a statement, or reckless disregard for its truth." Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch), 237 B.R. 160, 167 (9th Cir. B.A.P. 1999) (internal quotations, alteration, and citation omitted). A debtor's "[i]ntent to deceive can be inferred from the totality of the circumstances." Id.

Considering the totality of the circumstances, there is a genuine issue of material fact as to whether Mayer knew that his personal financial statement failed to disclose his contingent liabilities. The evidence shows that Mayer was a sophisticated developer who was involved in numerous real estate transactions. He personally signed personal guarantees on the $18,500,000 Scripps loan and the $34,000,000 Scripps loan on March 17, 2005, and October 11, 2005, respectively. (Lubin Dec. ¶¶ 2–3, Exs. A, C.) He had also personally guaranteed a loan from ChinaTrust Bank before requesting the loan from GSB. (Paolino Dec. ¶ 5.) There is no reason to believe that he was unaware of these large personal guarantees. Cf. Groth v. Masegian (In re Masegian), 134 B.R. 402, 406 (Bankr. E.D. Cal. 1991) (holding that "intent to deceive is properly inferred" where an "experienced businessman" omitted a large liability from his financial statement). There is likewise little reason to believe that he was unaware that his personal financial statement failed to disclose these liabilities, particularly in light of the fact that the amount of these liabilities ($75,500,000) far exceeded the total liabilities reported on his personal financial statement (less than $23,000,000). Given these circumstances, a reasonable jury could conclude that Mayer knew that his personal financial statement did not accurately reflect his liabilities, and that he intended to deceive GSB by failing to disclose them.

**3. REMAINING ELEMENTS**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-1934-GAF & CV 09-2086-GAF | Date | October 25, 2010 |
|---|---|---|---|
| Title | In Re: Robert O Mayer & Golden State Bank v. Robert O Mayer | | |

GSB has also presented evidence raising a genuine issue of material fact on the remaining elements. First, failing to disclose $75 million in potential liability, particularly when that liability exceeds a borrower's total assets, is a material omission. See In re Scarpinito, 196 B.R. at 262–63 (failure to report contingent liabilities worth 80 percent of reported net equity was material).

Second, a reasonable jury could conclude that GSB's reliance on Mayer's April 1, 2005, financial statement was reasonable. Whether a creditor's reliance was reasonable is a question of fact. La Trattoria, Inc. v. Lansford (In re Lansford), 822 F.2d 902, 904 (9th Cir. 1987). "Once it has been established that a debtor has furnished a lender a materially false financial statement, the reasonableness requirement of § 523(a)(2)(B) . . . is a low hurdle for the creditor to meet, and is intended as an obstacle only for creditors acting in bad faith." In re Gertsch, 237 B.R. at 170 (quoting Nat'l Union Fire Ins. Co. of Pittsburgh v. Bonnanzio (In re Bonnanzio), 91 F.3d 296, 305 (2d Cir. 1996)). Thus, where, as here, "there is evidence of materially fraudulent statements, little investigation is required for a creditor to have reasonably relied on the representations." Id. In light of the materially false statements, a reasonable jury could conclude that GSB's reliance on those statements was reasonable. Indeed, Mayer can hardly argue that GSB acted unreasonably in relying on a financial statement th

Finally, the parties do not dispute that the damage element is met.

### III.
### CONCLUSION

Because GSB has presented evidence raising a genuine issue of material fact on each element it must prove to prevent Mayer from discharging his liability for the Willowcrest loan, the Court **REVERSES** the grant of summary judgment to Mayer. Because material issues of fact exist, the Court **AFFIRMS** the denial of summary judgment to GSB.

**IT IS SO ORDERED.**